UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

CHESTRIA BELL,

    *Defendant.*

_____/

Case No. 2:20-cr-20336

District Judge
Gershwin A. Drain

Magistrate Judge
Elizabeth A. Stafford

**ORDER DENYING DEFENDANT'S MOTION OBJECTING TO ARMED CAREER CRIMINAL ENHANCEMENT [#49]**

Before the Court is Chestria Bell's ("Defendant") Motion Objecting to the Armed Career Criminal Enhancement outlined in the Federal Sentencing Guidelines Manual and 18 U.S.C. § 924(e). ECF No. 49. He seeks a presentence determination that the mandatory minimum sentence prescribed in § 924(e) does not apply in this case. The Government has not filed a brief in opposition, and the Court finds that one is not necessary. Having considered the briefing and argument on this issue, the Court will deny Defendant's Motion.

1

## I. LEGAL STANDARD

Under the Armed Career Criminal Act ("ACCA"),

> a person who violates section 922(g) of this title **and has three previous convictions referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense**, or both, committed on occasions different from one another, such person **shall be fined under this title and imprisoned not less than fifteen years** . . . the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e) (emphasis added). A defendant to whom this section applies is an armed career criminal subject to additional sentencing provisions under the Federal Sentencing Guidelines. *See* U.S.S.G. § 4B1.4.

A state law conviction qualifies as a "serious drug offense" under the ACCA if it involves "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in . . . 21 U.S.C. § 802 . . .) for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). To determine whether a prior state conviction qualifies as a predicate offense under the ACCA, "the court generally follows the 'categorical approach,' and may only consider the statutory definitions of the prior offenses, not the particular facts underlying them." *United States v. Wilkes*, 78 F.4th 272, 277 (6th Cir. 2023). Thus, the Court "may not count a conviction as one giving rise to a sentencing enhancement if the statute of conviction covers more conduct than the

2

federal law." *Id.* Nonetheless, even under the categorical approach, "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe v. Holder*, 569 U.S. 184, 191, 133 S. Ct. 1678, 1685 (2013) (citation omitted).

## II. DISCUSSION

On October 27, 2021, Defendant pled guilty to Count 3 of the Indictment: possession of a firearm by a convicted felon. 18 U.S.C. §§ 922(g); *see* ECF No. 15 (Indictment); ECF No. 41, PageID.308 (Plea Agreement). The United States Probation Office completed a Presentence Investigation Report on December 29, 2021, which identified Defendant's three prior felony convictions for drug offenses under Michigan law. ECF No. 43, PageID.337–338. According to the Report, Defendant was convicted for violations of Mich. Comp. Laws § 333.7401(2)(a)(iv), Delivery/Manufacture (Narcotic or Cocaine) Less Than 50 Grams, on three separate occasions in 1995, 2001, and 2004. *Id.* at PageID.337. Each offense is "punishable by imprisonment for not more than 20 years or a fine of not more than $25,000.00 or both." Mich. Comp. Laws § 333.7401(2)(a)(iv). Based on the above, the Probation Office determined that Defendant has at least three prior serious drug offenses and qualifies as an "armed career criminal." ECF No. 43, PageID.337.

Defendant does not contest the applicable law or his criminal history report. ECF No. 49, PageID.360–361. He contends, however, that his prior convictions are

not "serious drug offenses" for purposes of the ACCA because Michigan's definition of cocaine is broader than the federal definition. *Id.* at PageID.361. This discrepancy, Defendant believes, means that his prior drug offenses could have possibly involved a cocaine variety not covered by federal law. *See* ECF No. 49, PageID.363.

Under Michigan law, cocaine is defined as:

> [c]oca leaves and any salt, compound, derivative, or preparation thereof which is chemically equivalent to or identical with any of these substances, except that the substances do not include deconcainized coca leaves or extractions of coca leaves which extractions do not contain cocaine or ecgonine. **The substances include cocaine, its salts, stereoisomers, and salts of stereoisomers when the existence of the salts, stereoisomers, and salts of stereoisomers is possible within the specific chemical designation.**

Mich. Comp. Laws Ann §333.7214(a)(iv). Under federal law, cocaine is a Schedule II Controlled Substance defined as:

> Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine 9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, **except that the substances shall not include:**
> **(i)-Decocainized coca leaves or extraction of coca leaves, which extractions to not contain cocaine or ecgonine; or (ii) [123I]Ioflupane; or (iii) [18F]FP-CIT.**

21 USC §811; 21 C.F.R. § 1308.12(b)(4) (emphasis added). The statute clarifies that "the term 'isomer' means any optical or geometric isomer." 21 C.F.R. § 1300.01 ("Isomer").

4

A.     **The [123I]ioflupane Exemption**

Defendant first asserts that the Federal definition of cocaine is narrower than the Michigan definition because "[t]he Michigan statutory definition covers all cocaine derivatives while the Federal statutory definition exempts the derivative [123I]Ioflupane." *Id.* By simply giving effect to the words of both statutes, Defendant suggests, the Court should conclude that the Michigan definition of cocaine is plainly broader in that it covers cocaine derivatives exempted under federal law. *Id*.

He directs the Court to the decision in *United States v. Lofton*, where Judge Tarnow compared the Michigan and federal definitions of cocaine. That court found that federal law does not cover "certain stereoisomers and derivatives of cocaine that are criminalized in Michigan," meaning "it is possible that Lofton's 2011 and 2014 offenses involved a type of cocaine that is not prohibited under federal law." *United States v. Lofton*, No. 20-20221, 2021 U.S. Dist. LEXIS 225461, at *3–5 (E.D. Mich. Nov. 23, 2021) (citing favorably *United States v. Carter*, No. 21-00003 (W.D. Mich. Sept. 14, 2021), ECF No. 39)). On this finding, the court concluded that Lofton could not be considered a career offender. *Id.* at *5.

The 2021 *Lofton* decision is not dispositive. Since *Lofton*, district courts have consistently found that Michigan's exemption of [123I]ioflupane does not conflict with federal law. In May 2022, the court in *United States v. Wilkes* applied the

5

"realistic probability" standard outlined in *Moncrieffe* and found that "there is no realistic probability that Mr. Wilkes' Michigan convictions were in any way based on Ioflupane" because acquiring it "would have been virtually impossible" given its "certain radioactive properties and very short half life and a limited storage life . . ." *United States v. Wilkes*, Case No. 1:21-cr-42 (W.D. Mich. May 12, 2022) (ECF No. 89, Sentencing Hr'g Tr.). The court in *United States v. Taylor* reached a similar conclusion, finding that "there is no realistic probability that any Michigan cocaine convictions have, or could, involve [123I]ioflupane, and that Taylor has failed to show a 'realistic probability' that he would be prosecuted under Michigan law for possession of [123I]ioflupane." *United States v. Taylor*, No. 20-20449, 2022 U.S. Dist. LEXIS 147261, *21 (E.D. Mich. Aug. 17, 2022).

The Court finds the reasoning in *Wilkes* and *Taylor* compelling. As the *Taylor* court explains, [123I]ioflupane is "a radioactive cocaine derivative that is used in a radiopharmaceutical called 'DaTscan' in hospital brain scans to detect Parkinson's disease." *United States v. Taylor*, 2022 U.S. Dist. LEXIS 147261, *11. Thus, [123I]ioflupane is not viable for distribution or abuse because it (1) requires specialized equipment to produce in small amounts, (2) is radioactive, (3) cannot be stored longer than 24 hours, (4) requires a likely lethal dose of 15 liters to achieve a 'high,' and (5) could not be extracted from DaTscan because of its technical complexity and need for equipment not available to the public. *Id.* at *11.

Thus, whether [123I]ioflupane is exempt under federal law does not decide the matter. Even if [123I]ioflupane is a cocaine variety criminalized under Michigan law and not federal law, Defendant fails to show that there is a "realistic, not a theoretical possibility" that Defendant's prior drug offenses involved the radioactive [123I]ioflupane. *Moncrieffe*, 569 U.S. at 191. Further, Defendant has not shown through his own case or other cases that Michigan has or would apply its statute to a conviction for possession of this cocaine variety. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193, 127 S. Ct. 815, 822 (2007); *United States v. Taylor*, 2022 U.S. Dist. LEXIS 147261, at *19. Thus, Defendant's first challenge fails.

### B. Isomers

Defendant also argues that the Michigan and federal definitions of cocaine differ because "[t]he MI definition of cocaine includes substances not covered by the US definition . . . . MI also covers all cocaine stereoisomers, whereas the US covers optical and geometric isomers." ECF No. 49, PageID.365 (quoting Exhibit F). Defendant offers an expert report from Dr. Gregory Dudley, Chair of the Department of Chemistry at West Virginia University. Dr. Dudley contends that the "US specifically covers 'any optical or geometric isomer' of cocaine," which are "older terms [that] correspond to the modern terms, 'enantiomer' and 'cis-trans isomers.'" ECF No. 49-6, PageID.532. He asserts that "there is no cis- or trans-isomer of cocaine" and that "geometric isomer terminology is sometimes applied to

7

describe other types of stereoisomers, including diastereomers, but such usage deviates from consensus . . . and can create ambiguities." *Id*. Dr. Dudley's position, in sum, is that there are six diastereomers of cocaine that are unambiguously covered in MI but not at the US level." *Id.* at PageID.365 (quoting Exhibit F).

The Sixth Circuit has shut the door on this argument, as Dr. Dudley's position has been definitively rejected by the appellate court and need not be fully rehashed.[1] In *United States v. Wilkes*, the Sixth Circuit considered the same opinion Dr. Dudley offers here:

> Dr. Dudley opines, however, that it is unclear whether the federal law intended to cover all six diastereomers based on the use of the terms "optical" and "geometric" . . . . Dudley says that "geometric isomers" means "cis-trans" isomers, but that cocaine does not have any "cis-trans" isomers. He thus testified that the number of stereoisomers "unambiguously" included in the federal definition is only two. When asked about what the term "geometric isomer" could mean, Dr. Dudley explained that sometimes optical and geometric isomers are conflated with other stereoisomers, including diastereomers. In this regard, and consistent with Dr. Denmark's opinion, he conceded that if "these terms are conflated with other diastereomers, then they could include all of the other stereoisomers as well." His disagreement is that, currently, such terminology is neither proper nor widely accepted in the field of chemistry.

*United States v. Wilkes*, 78 F.4th 272, 282 (6th Cir. 2023).

---

[1] *See also United States v. Boxx*, No. 3:19-cr-210, 2022 U.S. Dist. LEXIS 213915, at *6 (N.D. Ohio Nov. 28, 2022) (considering Dr. Dudley's opinion and noting that "other courts have rejected this conclusion, both before and after the *Lofton* court issued its decision," and concluding that "the reasoning supporting these contrary decisions is more persuasive.").

8

In rejecting Dr. Dudley's interpretation of the statute, the *Wilkes* court largely relied on the legislative history of the Controlled Substances Act ("CSA"), which Congress amended in 1984 to include "optical" and "geometric" isomer language.[2] The Court found that shortly before the amendment was passed, district courts had been faced with the "isomer defense" in criminal proceedings because "federal law banned only 'coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances.'" *Id.* at 283 (quoting *United States v. Ross*, 719 F.2d 615, 617 (2d Cir. 1983)). The court found that this strategy appeared viable because prior to the 1984 amendment, courts interpreted federal law to "ban only L-cocaine (the isomer naturally derived from the coca leaf) and not any of cocaine's other isomers." *Wilkes,* 78 F.4th at 284. Thus, "in adding the terms 'optical' and 'geometric' isomers, Congress intended to capture all the known isomers of cocaine. The contrary reading . . . would leave the 'isomer defense' alive and well and fail to give Congress's 1984 statutory changes 'real and substantial

---

[2] The court also cited evidence that in 1986, the Drug Enforcement Agency ("DEA") "understood 'optical isomer' to include cocaine's enantiomer and 'geometric isomer' to include cocaine's six diastereomers.'" *Wilkes*, 78 F.4th at 284 ("the DEA explained that the new language incorporating cocaine's 'optical and geometric' isomers includes cocaine and its optical isomer ('the levorotatory and dextrorotatory forms of cocaine'), 'as well as the diastereomers.'") (quoting Schedules of Controlled Substances, Changes in Definitions, 51 Fed. Reg. 15,317 (Apr. 23, 1986)).

9

effect.'" *Id.*[3]

The above analysis controls here. Dr. Dudley's opinion that "geometric" isomers do not exist for cocaine is contrary to the CSA's legislative history and requires eliminating terminology intentionally added to expand, rather than contract, the statute's scope. This forced interpretation violates the "cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute." *United States v. Medlock*, 792 F.3d 700, 709 (6th Cir. 2015). To this end, and as Dr. Dudley admits, "[g]eometric isomer terminology is sometimes applied to describe other types of stereoisomers, including diastereomers . . ." ECF No. 49-6, PageID.532. The leading interpretation, that the Michigan and federal statutes both refer to the six diastereomers at issue, eliminates the asserted conflict and avoids the otherwise unsupported conclusion that Defendant's prior cocaine convictions were based on a cocaine variety exempted under federal law. For these reasons, "the federal statutory term—optical and geometric isomers—is coextensive with the Michigan statutory term, stereoisomers . . . [And] Michigan law does not cover more isomers of cocaine than federal law." *Wilkes*, 78 F.4th at 285. As such,

---

[3] Multiple district courts reached a similar conclusion, rejecting the "isomer defense," prior to the *Wilkes* ruling. *See United States v. Johnson*, Case No. 1:21-cr-34 (W.D. Mich. July 11, 2022) (Sentencing Hr'g Tr. at 53-54) (Maloney, J.); *United States v. Wilkes*, No. 1:21-cr-42 (W.D. Mich. May 12, 2022) (Sentencing Hr'g Tr. at 44-48) (Neff, J.); *United States v. Robinson*, No. 1:21-cr-118 (W.D. Mich. Mar. 23, 2022) (Sentencing Hr'g Tr. at 8-9) (Maloney, J.).

the Court finds that Defendant's prior Michigan cocaine convictions qualify as predicate offenses for purposes of the ACCA.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion Objecting to the Armed Career Criminal Enhancement (ECF No. 49) is **DENIED**.

**IT IS SO ORDERED**.

Dated:  March 13, 2024                     /s/ Gershwin A. Drain
                                           GERSHWIN A. DRAIN
                                           U.S. DISTRICT JUDGE

### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 13, 2024, by electronic and/or ordinary mail.
/s/Lisa Bartlett
Case Manager