UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      Case No. 2:20-cr-20336
                                              Hon. Gershwin A. Drain

                v.

CHESTRIA BELL,

                Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS COUNT III OF THE INDICTMENT [#58]

### I.      INTRODUCTION

On August 5, 2020, Mr. Chestria Bell ("Bell") was indicted for the following crimes: Count I: violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine), Count II: violation of 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime), and Count III: violation of 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon). ECF No. 15. On October 27, 2021, Bell entered a guilty plea for Count III, with the Government agreeing to dismiss the other charges so long as the Court imposes a sentence consistent with the agreement's terms. ECF No. 41, PageID.308–09. Because Bell has three prior felonies constituting "serious drug offenses," he is subject to a mandatory minimum

sentence of not less than 15 years pursuant to the Armed Career Criminal Act, and the plea agreement stipulates as such. *See id.* at PageID.309; 18 U.S.C. § 924(e).

After Bell entered his guilty plea but before sentencing, the United States Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 144 S. Ct. 1889 (2024). These cases impacted the way courts analyze the constitutionality of firearm regulations. Pursuant to these decisions, Bell filed a Motion to Dismiss Count III of his indictment, arguing that § 922(g)(1) is unconstitutional. ECF No. 58. While Bell's motion was pending, the Sixth Circuit decided *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). This case, the first from the Sixth Circuit to apply *Bruen* and *Rahimi*, further impacted the constitutional analysis of firearms regulations in this Circuit. As such, the Court ordered the parties to submit supplemental briefing on the way *Williams* impacted Bell's Motion to Dismiss. ECF No. 63.

The Motion has now been fully briefed by the parties. *See* ECF No. 58, 62, 64, 65. The Court concludes that oral argument will not aid in the disposition of this Motion, so it will determine the outcome on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2), E.D. Mich. L.Cr.R. 12.1. For the following reasons, the Court **DENIES** Bell's Motion to Dismiss Count III of the Indictment.

## II.        BACKGROUND

### a. Factual Background

The Drug Enforcement Agency ("DEA") began investigating Bell on suspicion of drug trafficking in 2020. ECF No. 62, PageID.615. After witnessing activity that appeared to be drug transactions during the DEA's surveillance, DEA agents obtained and executed a search warrant on Bell's home and two of his rental properties on July 21, 2020. *Id.*; ECF No. 1, PageID.3. During the search of Bell's home, agents found $281,000 in U.S. currency, nine firearms, 135 grams of suspected crack cocaine, 1,295 grams of suspected marijuana, and other drug paraphernalia. ECF No. 1, Page ID.4–5; ECF No. 62, PageID.615–16. In one of Bell's rental properties, agents found 432 grams of suspected heroin, 201 grams of suspected cocaine, and a firearm. ECF No. 1, PageID.6–7. In the other rental property, agents found another firearm. *Id.* at PageID.6.

Bell has a criminal history which includes convictions for several felonies. In 1992, at age 18, Bell was convicted of carrying a concealed weapon and was sentenced to two years' probation. *Id*. In 1995, he pleaded guilty to felony delivery or manufacture of a controlled substance less than 50 grams. *Id*. He was sentenced to probation. He violated his probation by committing another felony offense of delivery or manufacture of a controlled substance less than 50 grams, for which he pleaded guilty in 2001. *Id.* Bell spent one year in prison for this offense and was

3

paroled in 2002. He violated the terms of his parole by committing another felony offense of possession with intent to deliver a controlled substance less than 50 grams on school property in 2004, for which he was sentenced to 18 months to 40 years in prison. *Id.* He was paroled again in 2005. *Id.* In 2009, Bell was convicted of felony delivery or manufacture of marijuana and sentenced to probation. *Id.* Additionally, Bell had other minor run-ins with the law, such as simple possession of marijuana and certain driving offenses. *See* ECF No. 59, PageID.590–91, ¶¶ 42–44.

### b. Procedural Background

On August 5, 2020, a grand jury indicted Bell for Count I: violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine); Count II: violation of 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime); and Count III: violation of 18 U.S.C. § 922(g)(1) (possession of a firearm by a convicted felon). ECF No. 15. For the § 922(g)(1) charge, the grand jury relied on Bell's previous felony drug convictions from 1995, 2001, and 2004. *Id.* On October 27, 2021, Bell pled guilty to Count III (possession of firearm by a convicted felon). ECF No. 41, PageID.309. Because Bell has previously been convicted of three "serious drug offenses," he is subject to the Armed Career Criminal Enhancement under 18 U.S.C. § 924(e). That section states that if a defendant is found guilty of violating § 922(g) and has at least three prior "serious drug offense" convictions, the

defendant must be sentenced to a mandatory prison term of at least 15 years. ECF No. 58, PageID.564.

After pleading guilty, Bell moved to object to the Armed Career Criminal Enhancement, arguing that his prior drug convictions are not "serious drug offenses" as defined by the statute. ECF No. 49, PageID.361. The Court denied this motion in March 2024. ECF No. 56. Bell then moved to dismiss Count III entirely, which is the present motion before the Court. ECF No. 58.

### c. The Motion to Dismiss

Bell initially argued that pursuant to the Supreme Court's *Bruen* and *Rahimi* decisions, § 922(g)(1) was facially unconstitutional and unconstitutional as applied to him. *See* ECF No. 58, PageID.571–72. The Government contested both claims, arguing that *Bruen* and *Rahimi* did not disrupt older Supreme Court and Sixth Circuit precedent holding that prohibiting felons from possessing firearms was constitutional. ECF No. 62, PageID.621–22. However, just days after the Government responded to Bell's motion, the Sixth Circuit released its *United States v. Williams* opinion. 113 F.4th at 637. *Williams* changed the Second Amendment landscape post-*Bruen* by holding that § 922(g)(1) is susceptible to as-applied challenges by individuals who are not "dangerous." *Id.* at 662–63. Accordingly, the Court ordered the parties to submit supplemental briefing on the way *Williams* impacted Bell's claims.

In his supplemental brief, Bell argues that he is not "dangerous" under the *Williams* test, so § 922(g)(1) is unconstitutional as applied to him. ECF No. 65, PageID.648. In addition, Bell claims that *Williams*' interpretation of the constitutionality of § 922(g)(1) makes it unconstitutionally vague. *Id.* at PageID.649–53. For its part, the Government argues that Bell is "dangerous" under the conception of dangerousness provided by the Sixth Circuit in *Williams*, and therefore § 922(g)(1) is constitutional as applied to him. *Id.* at PageID.641.

## III.   LAW & ANALYSIS

### A. Legal Background

The Second Amendment of the United States Constitution states in its entirety: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. This right is "among the fundamental rights necessary to our system of ordered liberty." *McDonald v. Chicago*, 561 U.S. 742, 778 (2010). In *District of Columbia v. Heller*, the Supreme Court noted that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in the case of confrontation," and held that the possession of handguns in the home was protected under the Second Amendment. 554 U.S. 570, 592, 636 (2008). The Court noted, however, that the right "is not unlimited." *Id.* at 626. Rather, the Court stated that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions

6

on the possession of firearms by felons" and that these prohibitions are "presumptively lawful." *Id.* at 626–627, 627 n.26; *see also McDonald*, 561 U.S. at 786 (reiterating *Heller*'s proclamation that regulations prohibiting possession of firearms by felons are lawful).

After *Heller* and *McDonald*, the Courts of Appeals "coalesced around a 'two-step' framework . . . that combine[d] history with means-end scrutiny" when determining whether a firearm regulation was constitutional. *Bruen*, 597 U.S. at 17. At step one, a court was required to determine whether the challenged law regulated activity that fell outside of the scope of the Second Amendment as it was originally understood. *See United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012). If the activity was categorically unprotected, the analysis stopped there. *Id.* But if the activity was not categorically unprotected, step two required the court to inquire into "the strength of the government's justification for restricting or regulating the exercise of Second Amendment Rights"—in other words, determine whether the government's end justified the means. *Id.* (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)).

*Bruen* changed this analysis by rejecting step two: the application of means-end scrutiny in the Second Amendment context. *Bruen*, 597 U.S. at 19. Instead, the Court held that the following test is proper:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively

> protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation.

*Id.* at 17. As such, the *Bruen* test is "rooted in the Second Amendment's text, as informed by history," which requires "the government… [to] affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. Notably, firearm regulations need not be "identical to ones that could be found in 1791." *Rahimi*, 144 S. Ct. at 1897–98. Rather, laws regulating firearms must simply be "relevantly similar to laws that our tradition is understood to permit." *Id.* at 1898, 1901 (holding that an individual who poses a credible threat to the physical safety of another may be disarmed under 18 U.S.C. § 922(g)(8)).

After the *Bruen* decision, many district courts in the Eastern District of Michigan concluded that the ruling did not affect *Heller*'s proclamation that disarmament of felons is "presumptively lawful," and that 18 U.S.C. § 922(g)(1)—the felon disarmament statute—was constitutional. *Heller*, 554 U.S. at 627 n.26; *see, e.g.*, *United States v. Williams*, No. 23-20243, 2023 WL 8190690, at *5 (E.D. Mich. Nov. 27, 2023) (Drain, J.); *United States v. Holmes*, No. 23-20075, 2023 WL 4494340, at *3 (E.D. Mich. July 12, 2023) (Parker, J.); *United States v. Bluer*, No. 22-20557, 2023 WL 330984, at *6 (E.D. Mich. May 8, 2023) (Michelson, J.).

Indeed, other Circuits have concluded similarly. *See, e.g.*, *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024); *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024).

But the Sixth Circuit ultimately decided that it "see[s] things a bit differently[.]" *Williams*, 113 F.4th at 646. It determined that pre-*Bruen* precedent did not engage in the historical analysis that *Bruen* commands, so it must be reevaluated in light of *Bruen*. *Id.* at 648. Thus, the Sixth Circuit first inquired into whether the Second Amendment's plain text covers a felon's possession of a firearm. *Id.* It concluded that nothing in the Second Amendment's text "draws a distinction among the political community between felons and non-felons[,]" so a felon's possession of a firearm is presumptively protected. *Id.* at 649. As such, § 922(g)(1) must be "consistent with the principles underpinning our historical regulation of firearms" to be constitutional. *Id.* at 650.

To determine whether § 922(g)(1) is consistent with the Nation's history and tradition of firearm regulation, the Sixth Circuit engaged in an exhaustive historical analysis spanning from the Middle Ages to colonial America. *See id.* at 650–57. It determined that there is a historical tradition of disarming "whole classes" of individuals that the government deemed "dangerous" for one reason or another. *Id.* at 657. However, individuals within a disarmed class were generally given a chance to "demonstrate that their particular possession of a weapon posed no danger to

9

peace." *Id.*   Therefore, the Sixth Circuit concluded that in the modern context "legislatures may disarm groups of people, like felons, whom the legislature believes are dangerous—so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous." *Id.* at 663.

Applying this finding to § 922(g)(1), the Sixth Circuit held that the statute is facially constitutional because it is constitutional in "most applications"—where the felon-defendant is dangerous. *Id.* at 657; *see United States v. Salerno*, 481 U.S. 739, 745 (1987) (noting that to be facially unconstitutional, a statute must be unconstitutional in every circumstance in which it could be applied). However, it held that the statute is "susceptible to an as-applied challenge" where a felon is not dangerous, and that district judges serve the function of making the dangerousness determination. *Williams*, 113 F.4th at 657.

As a guide to the district courts, the Sixth Circuit divided crimes into three categories. In the first category are crimes against the person, such as "murder, rape, assault, and robbery." *Id.* at 658. The court noted that a history of violent crimes like these are "strong evidence that an individual is dangerous." *Id.* In the second category are crimes that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," such as drug trafficking and burglary. *Id.* at 659. The court stated that convictions for these crimes will often

10

"justify a finding of danger." *Id.* In the final category are "crimes that cause no physical harm to another person or the community," such as mail fraud and making false statements. *Id.* The court stated that these cases are "challenging," but that district courts will likely "have no trouble concluding that many of these crimes don't make a person dangerous." *Id.* The Sixth Circuit emphasized that courts need not make categorical determinations about dangerousness, but rather should make "fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction[,]" and evaluating the individual's "entire criminal record." *Id* at 663.

### B. Facial Constitutionality of § 922(g)(1)

As an initial matter, Bell's original argument that § 922(g)(1) is facially unconstitutional has been foreclosed by the superseding *Williams* decision. *See id.* at 643; ECF No. 58, PageID.571. Bell concedes as such in his supplemental briefing, which states that the only question before the Court now is whether § 922(g)(1) is constitutional as applied to him. ECF No. 65, PageID.645. Thus, Bell's facial challenge to the felon-in-possession statute fails.

### C. Constitutionality of § 922(g)(1) As Applied to Bell

As to Bell's as-applied challenge, Bell argues that although drug trafficking is a crime the Sixth Circuit specifically pinpointed as justifying a finding of "dangerousness," he should not be found dangerous for his prior drug trafficking

convictions. *Id.* at PageID.648. He notes that none of his convictions involved violence at the time, and that his most recent drug offense occurred in 2008, over a decade prior to the instant offense. *Id.* He further argues that his concealed weapon conviction does not inherently demonstrate dangerousness. *Id.* at 648–49.

In contrast, the Government contends that the age of Bell's prior convictions does not dispel his dangerousness, especially considering that one of his convictions involved intent to sell drugs on school property. ECF No. 64, PageID.641. It also claims that illegally carrying a concealed weapon poses a danger to the community, especially considered in combination with Bell's felony drug offenses. *Id.* Notably, Bell and the Government disagree about whether the Court may consider the circumstances underlying his instant criminal proceedings in determining dangerousness. *See id.* at PageID.641–42; ECF No. 65, PageID.649.

The *Williams* court provided no guidance on how a district court "ought to weigh factors such as the defendant's age at the time of their conviction or the age of the conviction itself." *United States v. Green*, No. 23-cr-20506, 2024 WL 4469090, at *3 (E.D. Mich. Oct. 10, 2024). But it is true that convictions over a decade old are "sometimes recognized as having less probative value" regarding a person's present disposition. *Id.* (citing Fed. R. Evid. 609 as an example, which limits the admissibility of prior convictions to demonstrate a witness's character for

truthfulness if they are over 10 years old). Regardless, under *Williams*, the burden is on the defendant to prove he is not dangerous. *Williams*, 113 F.4th at 662.

Here, the only reasons Bell relies on to argue that he is not dangerous are that (1) his prior felony convictions did not involve the use of violence and (2) his prior felonies are old. But the use of violence during prior drug trafficking crimes is not a prerequisite for finding a person dangerous and disarming him. *See id.* at 659; *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."); *Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination.").

Furthermore, although Bell's crimes are old, the repeated nature of his drug trafficking offenses indicates dangerousness. *See United States v. Goins*, No. 23-5848, 2024 WL 4441462, at *2 (6th Cir. Oct. 8, 2024) (defendant's "repeated actions demonstrate[] a likelihood of future dangerous conduct"); *United States v. Smith*, No. 1:23-cr-83, 2024 WL 4453270, at *3 (E.D. Tenn. Oct. 9, 2024) ("[T]he Court cannot look past Defendant's multiple prior convictions for serious crimes" despite his rehabilitation efforts); *United States v. Jennings*, No. 2:24-CR-20173-TBG-EAS, 2024 WL 4560602, at *4–*5 (E.D. Mich. Oct. 24, 2024) (noting that although older convictions may be less probative of dangerousness, defendant's multiple criminal offenses demonstrate his dangerousness). Bell repeatedly committed these drug

13

trafficking offenses from his younger years well into adulthood, with his last drug trafficking offense occurring at age 35. *See* ECF No. 59, PageID.587–90, ¶¶ 38–41; *cf. Green*, 2024 WL 4469090, at *4 (discussing the fact that defendant was a minor at the time of his drug trafficking charge, noting that minors are more capable of change than adults). Moreover, one of his convictions was for possession with intent to distribute on the grounds of a high school, demonstrating exceptional potential harm to impressionable minors. ECF No. 59, PageID.589, ¶ 40.

Bell also has one concealed weapon conviction from over 30 years ago. ECF No. 59, PageID.587. The parties contest the extent this conviction is probative of Bell's dangerousness. *Williams* may indicate that prior firearms-related offenses support a finding of dangerousness. *Williams*, 113 F.4th at 662 (noting that defendant was convicted of possessing a firearm as a felon, and concluding that any one of his convictions—including the possession conviction—could have been used to demonstrate his dangerousness); *see also United States v. Hines*, No. 3:22-cr-157, 2024 WL 4252569, at *5 (N.D. Ohio Sept. 12, 2024) ("[I]rresponsible firearms behavior… endangers the community at large and heightens the risk of a violent confrontation."). Yet, this was Bell's only conviction for this offense, he committed the offense at merely 18 years old, and the conviction is over 30 years old. *See Green*, 2024 WL 4469090, at *3–*4. Thus, the probative value of this single conviction is likely weak. Regardless, Bell's drug trafficking offenses are sufficient to find that

he may be constitutionally disarmed under § 922(g)(1). *See United States v. Oravets*, No. 1:23-cr-601, 2024 WL 4041442, at *3 (N.D. Ohio Sept. 4, 2024) ("[defendant's drug trafficking] crimes, alone, are more than sufficient to convince this Court that [defendant] is dangerous.").[1] As such, Bell has not carried his burden to show that he is not dangerous.

### D. Vagueness

Bell's next argument is that the *Williams* decision creates a vagueness issue. ECF No. 65, PageID.649. He claims that by exemplifying three categories of crimes, the *Williams* decision essentially asks courts to conduct a categorical inquiry when determining dangerousness. *Id.* at PageID.651. But he notes that the Supreme Court has held that similar categorical approaches prescribed in statutes are unconstitutional because they create a vagueness problem. *Id.*; *see Johnson v. United States*, 576 U.S. 591 (2015) (finding 18 U.S.C. § 924(e)(2)(B)(ii)'s residual clause unconstitutionally vague); *Sessions v. Dimaya*, 584 U.S. 148 (2018) (finding 18

---

[1] Because the Court finds that Bell is dangerous based on his prior drug trafficking convictions, it need not delve into the issue of whether it may consider the circumstances underlying Bell's instant criminal proceedings in determining his "dangerousness." Notably, neither party cited any case law for or against the proposition that the Court may consider the circumstances underlying the indictment in its analysis. *Williams* does not provide any guidance on that issue. *See Williams*, 113 F.4th at 658 n.12 (leaving the question of what information, other than past convictions, is relevant to the dangerousness determination "for another day."). As of now, no cases post-*Williams* have relied on such information. *See Hines*, 2024 WL 4252569, at *3 (noting that *Williams* is not a perfect fit at the motion to dismiss an indictment stage because "no facts have yet been found by a judge or jury.").

U.S.C. § 16(b)'s residual clause unconstitutionally vague); *United States v. Davis*, 588 U.S. 445 (2019) (finding 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague). Bell argues that *Williams'* dangerous person test will be nearly impossible to apply consistently and fails to provide fair notice about whether gun possession is a constitutional entitlement or a crime. ECF No. 65, PageID.652–53. As such, he claims that the *Williams* holding makes § 922(g)(1) "so vague as to be facially unconstitutional."[2]

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "A criminal statute is unconstitutionally vague if it defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)). Notably, a vagueness challenge to a statute that does not involve First Amendment freedoms "must be examined in light of the facts at hand." *Krumrei*, 258 F.3d at 537 (quoting *United States v. Powell*, 423 U.S. 87, 92 (1975)); *see also United States v. Mazurie*, 419 U.S. 544, 550 (1975). In other words, a

---

[2] The Government did not address this issue, likely because it submitted its post-*Williams* supplemental briefing before Bell did.

defendant "bears the burden of establishing that the statute is *vague as applied to his particular case*." *Kernell*, 667 F.3d at 750 (emphasis added).

Bell's vagueness attack fails for two reasons. First, Bell has cited no authority for the proposition that a *judicial ruling* pertaining to a statute can make the statute unconstitutionally vague. Nor does it seem that any exists. *See, e.g.*, *Fed. Trade Comm'n v. Amazon.com, Inc.*, No. 2:23-cv-00932, 2024 U.S. Dist. LEXIS 94699, at *55–*56 (W.D. Wash. May 28, 2024) (finding that the vagueness doctrine applies to statutes and regulations, and cannot apply to an agency's interpretation of a statute and its enforcement strategy); *see also Hogan v. United States*, Nos. 3:19-cv-767, 3:16-cr-139, 2021 WL 4521957, at *13–*14 (M.D. Fla. Oct. 4, 2021) (ignoring petitioner's argument that Eleventh Circuit's interpretation of § 922(g)(1) made the statute vague, and finding that the statute is clear on its face). Rather, cases that analyze the vagueness doctrine refer to vague statutes or regulations. *See, e.g.*, *Davis*, 588 U.S. at 470; *Dimaya*, 584 U.S. at 174–75; *Johnson*, 576 U.S. at 606; *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A conviction or punishment fails to comply with due process if the *statute* or *regulation* under which it is obtained" fails to provide fair notice or encourages arbitrary and discriminatory enforcement) (emphasis added)).

Here, there is no question that § 922(g)(1) is clear on its face. It proscribes a felon from possessing a firearm. *See United States v. Smith*, 770 Fed. App'x 955,

960 (11th Cir. 2019) (holding that "the plain language of § 922(g)(1) makes it clear" that it is unlawful for a felon to possess a firearm that has moved in interstate commerce; this is "straightforward and sufficient to provide fair warning of the proscribed conduct."). Furthermore, *Williams* did not change the fact that *every* felon may still be "categorically disarmed" under § 922(g)(1). *See Williams*, 113 F.4th at 663 ("[L]egislatures may disarm *groups of people, like felons,* whom the legislature believes is dangerous…" (emphasis added)); *United States v. Gailes*, No. 23-5928, 2024 WL 4457416, at *5 (6th Cir. Oct. 10, 2024) (stating that *Williams* held that "convicted felons may be categorically disarmed under § 922(g)(1)…"). The crux is simply that such categorically disarmed groups must be given an opportunity to prove non-dangerousness, which is satisfied by the availability of bringing an as-applied challenge in the courts. *Williams*, 113 F.4th at 661. Since § 922(g)(1)'s prohibition still applies to every felon, there is no vagueness in the statute created by *Williams* because every felon still must not possess a firearm until non-dangerousness is established.

The second reason why Bell's as-applied challenge fails is that even if the *Williams* holding could make § 922(g)(1) vague, Bell would not be able to contest vagueness because the statute would not be vague as applied to his particular case. Because this statute does not "implicate First Amendment concerns"—rather, it implicates Second Amendment concerns—it must be vague as it applies to Bell's

particular circumstances for Bell to raise a vagueness argument. *Kernell*, 667 F.3d at 750. In the *Williams* decision, the Sixth Circuit specifically identified drug trafficking as a "prime example" of a crime that "justif[ies] a finding of danger." *Williams*, 113 F.4th at 659. That is the crime that Bell has repeatedly been convicted of and the predicate offense upon which the instant § 922(g)(1) charge is based. As such, he "engage[d] in some conduct that is clearly proscribed [and] cannot complain of the vagueness of the law[.]" *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

The Court also notes that *Johnson*, *Dimaya*, and *Davis*—relied upon by Bell for the proposition that the *Williams* holding makes § 922(g)(1) vague—are inapposite here. The question before the *Johnson* court was whether 18 U.S.C. § 924(e)(2)(B)'s residual clause was unconstitutionally vague. *Johnson*, 576 U.S. at 593. Under 18 U.S.C. § 924(e), a person who violates § 922(g)(1) and has three or more earlier convictions for a "serious drug offense" or a "violent felony" is subject to a mandatory minimum sentence of 15 years. The term "violent felony" is defined in part as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B). This is known as § 924(e)(2)(B)'s residual clause. *Johnson*, 576 U.S. at 594. Courts applied a "categorical approach" to determining whether a crime qualified as a violent felony under the residual clause. *Id.* at 596. This approach required a court to inquire into what kind of conduct

the crime involved in "the ordinary case," to determine the "potential risk" the crime posed and conclude whether it was a "violent felony." *Id.*

Ultimately, the *Johnson* court found that the statute created uncertainty about how to estimate the risk posed by a crime because the judicial assessment of risk was tied to the crime's hypothetical "ordinary case." *Id.* at 597. In addition, the statute was unclear about what threshold level of risk made a crime a "violent felony" under the residual clause. *Id.* at 598. Following *Johnson*, the Supreme Court invalidated other statutes that included similar language and required a similar categorical approach to determining whether a crime qualified under the statute. *Dimaya*, 584 U.S. at 174–75 (invalidating 18 U.S.C. § 16(b)'s clause that defined a "crime of violence" as a felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"); *Davis*, 588 U.S. at 470 (invalidating 18 U.S.C. § 924(c)(3)(B), which defined a "crime of violence" as a felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").

Contrary to what Bell suggests, *Williams* does not ask courts to apply a categorical approach to determine whether a person is "dangerous." Indeed, the *Williams* court emphasized that courts *need not* find "categorical matches" to show that a defendant is dangerous, but should instead make "fact-specific dangerousness

determinations after taking account of the unique circumstances of the individual, including details of his specific conviction." *See Williams*, 113 F.4th at 660, 663.

Bell points to a passage in *Williams* which states that district courts can make an "informed judgment about how criminals commonly operate" in determining dangerousness, and argues that this indicates that *Williams* requires a categorical approach. *Id.* at 660. But in the very next sentence, the *Williams* court notes that the "dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Id.* The court was "only mak[ing] the commonsense point that certain categories of offenses—like historical crimes against the person—will strongly suggest that an individual is dangerous." *Id.* In sum, *Williams*' "case-specific approach… avoid[s] the vagueness problems that doomed the statutes" in *Johnson*, *Dimaya*, and *Davis*. *Davis*, 588 U.S. at 454.

Furthermore, the fact that the *Williams* decision leaves somewhat unclear what threshold level of dangerousness is needed for a person to be constitutionally disarmed does not doom its interpretation to vagueness. *See Dimaya*, 584 U.S. at 159. "Many perfectly constitutional statutes use imprecise terms," and the unclear risk thresholds in *Johnson*, *Dimaya*, and *Davis* were only an issue because they were "layer[ed]… on top of the requisite 'ordinary case' inquiry." *Id.* Here, because there is no "ordinary case" inquiry—in other words, courts must use a case-specific approach to finding dangerousness, not a categorical one—*Williams*' qualitative

21

dangerousness threshold would pass constitutional muster. *See Johnson*, 576 U.S. at 603–04 ("[W]e do not doubt the constitutionality of laws that call for the application of a qualitative standard… to real-world conduct.").

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, the Court **DENIES** Defendant Chestria Bell's Motion to Dismiss Count III of the Indictment. [ECF No. # 58].

SO ORDERED.

Dated:  October 28, 2024                                  /s/Gershwin A. Drain
                                                         GERSHWIN A. DRAIN
                                                         United States District Judge


### CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 28, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager